UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------------ x
ANGEL RIVERA,                                   :
                                                :
                      Plaintiff,   :
                                                :        **ORDER GRANTING**
       -against-                        :        **DEFENDANTS' MOTION**
                                                :        **TO DISMISS**
ALTICE TECHNICAL SERVICES US, LLC *et al.*,     :
                                                :        3:24-CV-00541 (VDO)
                    Defendants.  :
                                                x
------------------------------------------------------------------

**VERNON D. OLIVER**, United States District Judge:

    Angel Rivera has filed suit against Altice Technical Services US, LLC ("Altice") and CSC Holdings, LLC ("CSC"), alleging that they discriminated against him on the basis of his race and defamed him. The Defendants believe that Rivera has failed to state a claim on which relief can be granted and have therefore moved to dismiss the action. The Court agrees and grants the motion to dismiss but concludes that the interests of justice favor granting Rivera leave to amend his complaint if he so chooses.

**I.**    **BACKGROUND**

    The Court takes the facts in Rivera's complaint as true for the purposes of this ruling. *See Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007).

    Rivera began working for Defendants in March 2004 and, by February 2022, was a Direct Sales Account Executive.[1] His duties in that position included cellular phone product and service sales.[2] In January 2022, Rivera, who is Hispanic, was informed by his Caucasian

---

[1] Compl., ECF No. 1-2, at 3 ¶¶ 3–4. Altice is a wholly owned subsidiary of CSC. Disclosure Statement, ECF No. 3 at 1.
[2] Compl. at 3 ¶ 4.

manager that he was being suspended without pay for violating policies related to residential sales.[3] Before this incident, Rivera had "followed and complied with all of Defendants' employment policies" and had never been disciplined.[4]

Rivera, along with "other Hispanic direct sales account executives," was suspended and ultimately terminated on February 11, 2022, for, as Rivera claims his employer explained, "violation of employment policies."[5] Rivera explains that he never violated any employment policies, but does not specify what policy he was alleged to have violated, averring only that he "followed and complied with all . . . employment policies."[6] He further provides: "No other direct sale account executives were discharged for alleged violation of policies[.]"[7] And Defendants did not apply their progressive disciplinary policy in terminating Rivera.[8]

Since Rivera's termination, Defendants "have stated in the hearing of diverse persons" that Rivera "engaged in fraudulent conduct during his employment[.]"[9] Rivera claims that these "false and malicious" statements have "greatly injured" Rivera's "good name and character," causing him emotional distress.[10]

In February 2024, Rivera filed suit against Defendants in Connecticut Superior Court.[11] Defendants then removed the action to this Court.[12] Rivera brings claims for employment discrimination under the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen.

---

[3] *Id.* at 3–4 ¶¶ 2, 5.
[4] *Id.* at 4 ¶¶ 6, 9–10.
[5] *Id.* at 4 ¶¶ 7–8.
[6] *Id.* at 4 ¶ 9.
[7] *Id.*
[8] *Id.* at 5 ¶ 11.
[9] *Id.* at 6–7 ¶¶ 10.
[10] *Id.* at 6–7 ¶¶ 11–13.
[11] *Id.* at 10. *See Rivera v. Altice Tech. Servs. US, LLC*, FBT-CV24-6132912-S (Conn. Super. Ct. 2024).
[12] Notice of Removal, ECF No. 1.

Stat. § 46a-60 *et seq*., and common law defamation.[13] He seeks damages and attorney's fees.[14] Defendants have moved to dismiss the complaint, arguing *inter alia* that Rivera fails to adduce factual background sufficient to state a claim upon which relief may be granted.[15]

## II.   DISCUSSION

The standard that governs a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is well established. A complaint may not survive unless it alleges facts that taken as true give rise to plausible grounds to sustain a plaintiff's claims for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Regeneron Pharms., Inc. v. Novartis Pharma AG*, 96 F.4th 327, 338 n.7 (2d Cir. 2024).[16] This "plausibility" requirement is "not akin to a probability requirement," but it "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

"Although allegations that are conclusory are not entitled to be assumed true, when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020). "The court must also construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff." *Id.*

### A.   CFEPA

In his first count, Rivera alleges that Defendants terminated him because of his race, in violation of state law. Under CFEPA, employers are prohibited from discharging an employee

---

[13] Compl. at 5 ¶ 14, 6–7.
[14] *Id.* at 8 ¶¶ 1–2.
[15] Defs.' Mem., ECF No. 23.
[16] Unless otherwise indicated, this opinion omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions, and adopts alterations contained therein.

on the basis of race, national origin, or gender, among other protected factors.[17] Conn. Gen. Stat. § 46a–60(b)(1).[18] CFEPA claims are ultimately evaluated under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[19] *See Blake v. Recovery Network of Programs, Inc.*, 655 F. Supp. 3d 39, 49 (D. Conn. 2023) (citing *Bentley v. AutoZoners, LLC*, 935 F.3d 76, 88 (2d Cir. 2019)). But "[t]he *prima facie* case under *McDonnell Douglas*, [] is an evidentiary standard, not a pleading requirement," *Cooper v. Templeton*, 629 F. Supp. 3d 223, 230 (S.D.N.Y. 2022) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002)), and the framework "applies to the analysis of discrimination claims at summary judgment but not at the stage of a motion to dismiss," *Langer v. Hartland Bd. of Educ.*, No. 3:22-CV-01459 (JAM), 2023 WL 6140792, at *5 (D. Conn. Sept. 20, 2023).

Instead, on a motion to dismiss, the Court's task is to "evaluate the statutory discrimination claims by reference to the elements that must be pleaded and that would ultimately have to be proven at trial." *Langer*, 2023 WL 6140792, at *5. At this stage, "a plaintiff 'need only give plausible support to a minimal inference of discriminatory

---

[17] "Under Connecticut law, exhaustion of administrative remedies is a prerequisite to the Court's exercise of jurisdiction over a CFEPA claim." *Miro v. City of Bridgeport*, No. 3:20-CV-346 (VAB), 2023 WL 5021177, at *2 (D. Conn. Aug. 5, 2023); *see* Conn. Gen. Stat. § 46a-101(a). Because Plaintiff's complaint contained only a bare-bones assertion related to administrative remedies, Compl. at 6 ¶ 17, the Court ordered supplemental briefing as to whether Rivera had exhausted his administrative remedies, Supp. Brief. Ord., ECF No. 34. On the basis of Plaintiff's supplemental filing, the Court is satisfied that Rivera exhausted his administrative remedies before initiating this suit. Pl.'s Supp. Mem., ECF No. 37 at 2–3, 14.

[18] The statute reads in full: "It shall be a discriminatory practice in violation of this section: For an employer, by the employer or the employer's agent, except in the case of a bona fide occupational qualification or need, to refuse to hire or employ or to bar or to discharge from employment any individual or to discriminate against any individual in compensation or in terms, conditions or privileges of employment because of the individual's race, color, religious creed, age, sex, gender identity or expression, marital status, national origin, ancestry, present or past history of mental disability, intellectual disability, learning disability, physical disability, including, but not limited to, blindness, status as a veteran or status as a victim of domestic violence." Conn. Gen. Stat. § 46a-60(b)(1).

[19] The legal standard for discrimination claims under CFEPA is the same as under Title VII. *See Egbujo v. Nuvance Health, Inc.*, No. 3:20-CV-1133 (JAM), 2023 WL 5153612, at *8 (D. Conn. Aug. 10, 2023) (citing *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 556 (2d Cir. 2010)).

motivation.'" *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 306, 311 (2d Cir. 2015)); *see Bockus v. Maple Pro, Inc.*, 850 F. App'x 48, 50 (2d Cir. 2021) (same). Put another way, "absent direct evidence of discrimination, what must be plausibly supported by facts alleged in the complaint is that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Murillo-Roman v. Pension Bds. - United Church of Christ*, No. 1:22-CV-08365, 2024 WL 246018, at *10 (S.D.N.Y. Jan. 23, 2024) (quoting *Littlejohn*, 795 F.3d at 311).[20]

Accepting his allegations as true, the Court concludes that (1) Rivera is a member of a protected class with respect to his race, (2) he was qualified for his position, and (3) he suffered an adverse employment action when he was fired from his job. *See Garcia v. Altice Tech. Servs., LLC*, No. 3:21-CV-00522 (JAM), 2023 WL 22495, at *4 (D. Conn. Jan. 3, 2023) (finding that Hispanic plaintiff was a member of a protected class and suffered an adverse employment action when he was fired); *Cobb v. Atria Senior Living, Inc.*, No. 3:17-CV-00291 (MPS), 2018 WL 587315, at *3 n.3 (D. Conn. Jan. 29, 2018) (finding that plaintiff was qualified for his position based on four years of employment by the defendant and over ten years of experience in the industry).

---

[20] "Direct evidence of discrimination consists of 'evidence of conduct or statements by persons involved in the decision making process that may be viewed as directly reflecting the alleged discriminatory attitude.'" *Greenfield v. McDonald's Corp.*, No. 3:10-CV-40 (VLB), 2011 WL 3859717, at *5 (D. Conn. Sept. 1, 2011) (quoting *Ostrowski v. Atlantic Mut. Ins. Cos.*, 968 F.2d 171, 182 (2d Cir. 1992)). Rivera does not invoke the direct evidence standard and at no point provides allegations of statements or actions that could be considered direct evidence.

But Rivera has not shown that the Defendants' actions were motivated by discriminatory intent. At this stage, a plaintiff may demonstrate an inference of discriminatory intent by alleging "the more favorable treatment of employees not in the protected group." *McLean v. WE Transp.*, No. 3:22-CV-00437 (SRU), 2023 WL 5177912, at *3 (D. Conn. Aug. 10, 2023) (quoting *Littlejohn*, 795 F.3d at 312). "Courts generally will look to whether a plaintiff and his comparators were (1) 'subject to the same performance evaluation and discipline standards' and (2) 'engaged in comparable conduct.'" *Arcamone v. Town of Trumbull*, No. 3:20-CV-00019 (VAB), 2021 WL 311281, at *7 (D. Conn. Jan. 29, 2021) (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000)).

Rivera has not satisfied this "low standard," *Doe v. Columbia Univ.*, 831 F.3d 46, 48 (2d Cir. 2016), because he has "not alleged that there were any comparable co-workers who were treated differently," *McCrae v. H.N.S. Mgmt. Co.*, No. 3:22-CV-00217 (JBA), 2022 WL 16635390, at *6 (D. Conn. Nov. 2, 2022). Rivera does not contend that non-Hispanic employees who engaged in the same allegedly impermissible behavior were not accused of violating company policies. Nor has he alleged that non-Hispanic employees were accused of violating company policies but not fired for the same actions.[21] In short, Rivera has made no

---

[21] In briefing, Rivera makes vague references to "door to door sales" policies of the Defendants. Pl.'s Mem., ECF No. 32, at 8–9. But Rivera provides no information whatsoever about what action(s) he was alleged to have taken in violation of this policy and how potential comparators performed the same actions. And the Court declines to consider allegations that are not included in either the complaint itself or a document that is integral to the complaint. *See United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021); *Langer*, 2023 WL 6140792, at *6 n.44. If Rivera saw the need to supplement his complaint, he should have filed an amended complaint as of right or sought leave to do the same. *See* Fed. R. Civ. P. 15. But even if the Court were to consider these vague claims, without any information whatsoever as to the alleged violation, the Court cannot identify the relevant comparators and thus cannot infer discriminatory intent.

allegations about comparable co-workers that would allow the Court to infer that they received "more favorable treatment."

Much of Rivera's difficulty in alleging a comparator is a result of the skeletal complaint that he filed. At times, Rivera perhaps begins the process of describing an alleged comparator. For example, Rivera claims that he "did not violate the Defendants' policies and [he], together with the other direct sale account executives, performed their duties in the same manner."[22] But this statement merely exposes the uncommonly minimalist nature of Rivera's complaint. Rivera does not explain who "the other direct sale account executives" are—perhaps, he means to refer to the other Hispanic employees he claims were fired, but the Complaint never clarifies as much. Nor does he explain what he means in stating that he and the other executives "performed their duties in the same manner": the statement seems to indicate a supposed comparator but never defines the comparator.

Nor does it matter that Rivera was suspended, and ultimately discharged, by a Caucasian manager.[23] "[A] claim for discrimination is not made plausible simply because the person who has engaged in an adverse action is of a different race than the plaintiff." *Milledge v. City of Hartford*, No. 3:19-CV-01104 (JAM), 2020 WL 3510813, at *3 (D. Conn. June 29, 2020). After all, employees are regularly dismissed by managers who differ from them in some

---

Rivera states that he had objectively never violated any company policy. The Court credits this claim, as is required at this stage in the litigation. Perhaps Rivera means to contend that the relevant comparator is non-Hispanic employees who, like him, had never violated a policy. But because he provides no information about why he was allegedly terminated, this generalized claim is insufficient to establish a comparator. As the Complaint stands, the Court would be left to engage in guesswork to identify comparators. To do so is impermissible where the plaintiff has failed, of their own accord, to clearly supply allegations sufficient to state a claim for relief.

[22] Compl. at 4 ¶ 10.

[23] *See* Compl. at 3–4 ¶ 5; Pl.'s Mem. at 9.

way, including by race. But the Second Circuit has explained that "[i]f that fact, without more, could suffice to support the finding of discrimination . . ., it would be hard to imagine a termination that could not be attributed to discrimination." *Norton v. Sam's Club*, 145 F.3d 114, 119 (2d Cir. 1998). Accordingly, the Court will grant the motion to dismiss as to Rivera's CFEPA claim.

### B. Defamation

In counts two and three, Rivera brings claims of defamation. A common law defamation claim requires a plaintiff to establish: "(1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement." *Dorfman v. Smith*, 271 A.3d 53, 67 n.7 (Conn. 2022).

There are "basic procedural requirements of pleading, especially in the context of a defamation complaint," and a claim for defamation must "specifically identify what allegedly defamatory statements were made, by whom, and to whom."[24] *Stevens v. Helming*, 135 A.3d 728, 732 & n.3 (Conn. App. Ct. 2016); *see Nations Equip. Fin., LLC v. Stolarski*, No. FSTCV206048048S, 2021 WL 5277465, at *6 (Conn. Super. Ct. Oct. 19, 2021) (explaining that the specificity requirement for defamation claims is "a variation on the journalistic '5 Ws'—who said what to whom and when, with 'where and in what context' as helpful adjuncts" (cleaned up)). But Rivera has not done so here. Instead, he provides only the rudimentary

---

[24] Although this standard was announced in dicta, *see Stevens v. Khalily*, 298 A.3d 1254, 1261–62 (Conn. App. Ct. 2023), it was formulated from "the reasoning of various Superior Courts in requiring specificity in pleading defamation," *Helming*, 135 A.3d at 732 n.3. Moreover, Connecticut courts have since found the standard to be "useful in understanding the pleading requirements in a defamation case." *Alvarado v. PMB, LLC*, No. FST CV 22-6058415-S, 2024 WL 3271910, at *4 (Conn. Super. Ct. June 28, 2024).

allegations that "Defendants . . . have stated . . . that the Plaintiff engaged in fraudulent conduct during his employment" and that such statements "were false and malicious."[25] These allegations are insufficient to support a defamation claim because they fail to identify the speaker with any particularity. *See Michel v. Bridgeport Hosp.*, No. 116015195, 2011 WL 1176885, at *18 (Conn. Super. Ct. Mar. 7, 2011) (reaching that conclusion with the allegation that "[t]he statements [were] made and published by the [d]efendants"); *Avitable v. 1 Burr Rd. Operating Co. II, LLC*, No. FSTCV095012806S, 2010 WL 2926242, at *10 (Conn. Super. Ct. June 4, 2010) (same result with the claim that the statements were made "by and through [defendant's] employees/agents").

    Nor has Rivera sufficiently alleged "to whom" the "allegedly defamatory statements were made." *Helming*, 135 A.3d at 732 n.3. Instead, he claims that these statements were "stated in the hearing of diverse persons."[26] But courts have found these exact allegations insufficient to plead defamation. *See Reyes v. Bridgeport Dentist, LLC*, No. FBTCV146041367, 2015 WL 4430850, at *8 (Conn. Super. Ct. June 18, 2015); *Law Offs. of Frank N. Peluso, P.C. v. Cotrone*, No. FSTCV065000599S, 2009 WL 3416247, at *3 (Conn.

---

[25] Compl. at 6–7 ¶¶ 10–11.
[26] Compl. at 6–7 ¶ 10. In his opposition to the motion to dismiss, Rivera claims that the allegedly "defamatory statements were made in a meeting held by the Defendant with other employees after the Plaintiff was discharged." Pl.'s Mem. at 11. Once again, the Court declines to credit assertions made only in briefing. *See United States ex rel. Foreman*, 19 F.4th at 106. But even if the Court were to consider these new claims, allegations that statements were "made to or in the presence of 'other employees of [the defendant]'" have been found to be "legally deficient with respect to identifying the persons who heard defamatory statements made about the plaintiff." *Alleva v. Stamford Health Med. Grp.*, No. FSTCV186037925S, 2019 WL 3248816, at *8–9 (Conn. Super Ct. June 6, 2019).

Super. Ct. Sept. 23, 2009). Accordingly, the Court grants the motion to dismiss as to Rivera's defamation claims.[27]

### C.      Leave to Amend

Having concluded that all of Rivera's claims should be dismissed, all that remains to decide is whether the Court should grant Rivera leave to amend. Neither party addressed leave to amend the Complaint in the event of dismissal. Nonetheless, leave to amend should be "freely give[n] . . . when justice so requires." *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 28 (2d Cir. 2016) (quoting Fed. R. Civ. P. 15(a)(2)); *see also Stein v. Needle*, No. 3:19-CV-01634 (VLB), 2020 WL 4043047, at *2 (D. Conn. July 17, 2020) ("The Second Circuit has noted 'when a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint . . . . Where the possibility exists that the defect can be cured and there is no prejudice to the defendant, leave to amend at least once should normally be granted as a matter of course.'" (quoting *Oliver Schs., Inc. v. Foley*, 930 F.2d 248, 252–53 (2d Cir. 1991))).

Courts in this circuit regularly offer leave to amend *sua sponte* after concluding that the interests of justice so require. *See, e.g.*, *Van Buskirk v. N.Y. Times Co.*, 325 F.3d 87, 91 (2d Cir. 2003) ("[I]t is often appropriate for a district court, when granting a motion to dismiss for failure to state a claim, to give the plaintiff leave to file an amended complaint."); *Parot v. Clarivate Plc*, No. 22-CV-00394 (EKK), 2023 WL 4163528, at *2 (E.D.N.Y. June 23, 2023); *S. Ill. Laborers' & Emps. Health & Welfare Fund v. Pfizer Inc.,* No. 08-CV-5175 (KMW), 2009 WL 3151807, *12 (S.D.N.Y. Sept. 30, 2009). Nonetheless, leave to amend should be

---

[27] Because the Court finds that Rivera has failed to state a claim upon which relief can be granted, the Court does not need to examine the Defendants' other arguments for dismissal. This opinion should not be construed to express any view, positive or negative, as to the merits of Defendants' other arguments for dismissal.

denied "if the moving party has unduly delayed or acted in bad faith, the opposing party will be unfairly prejudiced if leave is granted, or the proposed amendment is futile." *Pappas v. City of New York*, No. 23-CV-6010 (LJL), 2025 WL 343614, at *2 (S.D.N.Y. Jan. 30, 2025).

The Court can discern no evidence of bad faith or prejudice at this early stage. As to futility, the issues that lead the Court to dismiss Rivera's claims are essentially the result of the Complaint's bare-bones nature. Accordingly, the Court cannot conclude that the facts themselves prevent Rivera from making out a claim. Instead, at this point, the Complaint's deficiencies result primarily from the lack of facts included in the Complaint. Because Rivera could still produce additional information and thereby pursue a viable claim for relief, the Court *sua sponte* grants Rivera leave to file an amended complaint.

### III.    CONCLUSION

For the reasons set forth above, the Court **grants** the Defendants' motion to dismiss (ECF No. 22). The Court grants Rivera leave to file an amended complaint if he so chooses **on or before March 25, 2025.** However, Rivera is not free to amend the legal theories on which he seeks relief at this time. Should he wish to do so, he must follow the normal procedure for requesting such leave. *See* Fed. R. Civ. P. 15(a)(2).

Defendants' motion to stay discovery (ECF No. 52) pending the instant ruling is **granted**. Discovery will be stayed until further order of the Court terminating the stay of discovery.

      If an amended complaint or motion to amend is not timely filed, the Court will direct the Clerk of Court to enter judgment and close this case.

**SO ORDERED.**

Hartford, Connecticut
February 25, 2025

                                            /s/Vernon D. Oliver
                                            VERNON D. OLIVER
                                            United States District Judge