UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
------------------------------------------------------------  x
ANGEL RIVERA,                                                 :
                                                              :
                          Plaintiff,                          :
                                                              :
           v.                                                 :   3:24-CV-00541 (SFR)
                                                              :
CSC HOLDINGS, LLC                                             :
                                                              :
                          Defendants.                         :
------------------------------------------------------------  x
```

**MEMORANDUM & ORDER**

Plaintiff Angel Rivera filed a two-count Second Amended Complaint ("SAC") against Defendant CSC Holdings, LLC ("CSC") alleging that CSC fired Rivera for discriminatory reasons and published a defamatory statement about his conduct as an employee. CSC has moved to dismiss Count Two of the SAC under Federal Rule of Civil Procedure 12(b)(6), arguing that Rivera has not pleaded sufficient facts to state a claim for defamation. I disagree and thus deny the motion to dismiss.

**I.    BACKGROUND**

    **A.    Factual Background**

The following facts, alleged in the SAC, are assumed as true for purposes of the motion to dismiss. SAC, ECF No. 71.

Rivera is Hispanic and a member of a protected class. *Id.* at 1, ¶ 2.[1] Rivera was employed by CSC from approximately March 2004, until he was discharged on or about February 11, 2022. *Id.* at 1, ¶ 3. Rivera's position with CSC on the date of his discharge was

---

[1] Because the SAC contains duplicative paragraph numbers, I cite to the pagination set by ECF.

1

Direct Sales Account Executive. Rivera's job duties included door-to-door sales of CSC's services including cable, phone, cellular phone, and internet. *Id.* at 1, 2, ¶ 5. Cellular phone service was sold as a bundle package with internet service. *Id.* When cellular phone service was sold to a customer, CSC would subsequently mail a SIM card to the customer for activation of the cellular service. *Id.* If the customer decided not to use the SIM card, cellular service would not be activated. *Id.* Direct sales account executives, including Rivera, would receive commission payments from CSC based on sales. *Id.* at 2, ¶ 6.

On or about January 27, 2022, CSC's manager Blaise Wylie, who is White, contacted Rivera and informed him that he was being suspended without pay for violation of policies pertaining to residential sales. *Id.* at 2, ¶ 7. Rivera and other Hispanic direct sales account executives were suspended and subsequently discharged on February 11, 2022 for allegedly violating CSC's fraud policy by receiving commissions for the sale of cellular phone service that customers did not activate. *Id.* at 2, ¶ 9; 3, ¶ 11. Rivera was entitled to commissions for the sale of cellular phone service without regard to whether the customer activated the service. *Id.* at 3, ¶ 12. At the time of Rivera's discharge, CSC did not have a policy that would make commission payments contingent on activation of cellular phone service that was sold to the customers by direct sales account executives. *Id.* Many customers who were sold CSC cellular phone service agreed to have it included in a package with internet service and would not activate cellular service but would keep the internet service. *Id.*

Non-Hispanic direct sales account executives who were also supervised by Wylie and also received commission payments for the sale of CSC's cellular phone service were not accused of violating the CSC's fraud policy and were not disciplined or discharged when

2

customers did not activate the cellular phone service that was sold to them by these non-protected basis employees. *Id.* at 4, ¶ 14.

CSC held a sales meeting on or about March 2022 with direct sales executives of CSC. At the meeting Wylie, who managed the direct sales account executives in Westchester and Connecticut, informed all the direct sales executives present at the meeting that Rivera had been discharged for engaging in fraudulent activity. *Id.* at 7, ¶ 18. These words were false and malicious. *Id.* at 7, ¶ 19. As a consequence of this statement, Rivera has been subject to public ridicule and humiliation. The statement has interfered with his ability to obtain employment, has caused him great annoyance, embarrassment and shame, and has injured his good name and character. *Id.* at 7, ¶ 20, Rivera has suffered humiliation, mental anxiety and emotional distress and has been required to assume various incidental expenses. *Id.* at 8, ¶ 21.

**B.     Procedural History**

On February 27, 2024, Rivera filed this case in Connecticut Superior Court. ECF No. 1-2. On April 1, 2024, CSC removed this case to federal court. ECF No. 1. On April 18, 2024, CSC filed an Amended Notice of Removal. ECF No. 20. On May 8, 2024, CSC filed a Motion to Dismiss Rivera's Complaint. ECF No. 22. On February 13, 2025, CSC filed a Motion to Stay Discovery. ECF No. 52. On February 25, 2025, the Court granted CSC's Motion to Dismiss Rivera's Complaint.[2] On March 25, 2025, Rivera filed his first Amended Complaint. ECF No. 54. On May 29, 2025, this case was transferred to me. ECF No. 62.

---

[2] The Honorable Judge Vernon D. Oliver presided over this case before it was transferred to me on May 29, 2025.

On August 19, 2025, Rivera filed the SAC. ECF No. 71. On September 2, 2025, CSC filed a Motion to Partially Dismiss the SAC and accompanying Memorandum of Law. Mot. to Dismiss. ECF No. 72. Mem. of L. in Supp. of Def.'s Mot. to Dismiss ("Defs.' Mem."), ECF No. 73. On October 22, 2025, Rivera filed a Memorandum of Law in Opposition to the Motion to Dismiss the SAC. Pl.'s Mem. of L. in Opp. to Def.'s Mot. to Dismiss ("Pl.'s Mem."), ECF No. 83. On November 4, 2025, CSC filed a Reply. Def.'s Rep. in Supp. of Def.'s Motion to Dismiss ("Def.'s Rep."), ECF No. 84.

## II. LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018); *Lapaglia v. Transamerica Cas. Ins. Co.*, 155 F. Supp. 3d 153, 155-56 (D. Conn. 2016). Although this "plausibility" requirement is "not akin to a probability requirement," it "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. I must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). However, I am not bound to accept "conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008).

## III. DISCUSSION

CSC argues that Count Two of the SAC should be dismissed because (1) it fails to plead sufficient detail to state a plausible claim for defamation and (2) any potentially defamatory statements were privileged.

A.     **Sufficiency of the Pleading**

With respect to statements that Wylie allegedly made to direct sales executives at the March 2022 meeting, CSC asserts the SAC does not state a claim for defamation because it fails to "identify where the meeting occurred, why the statement was defamatory, or any facts demonstrating Plaintiff's reputation suffered injury as a result of the alleged statement." Def.'s Reply 6. Rivera responds that the SAC is sufficiently specific as to the March 2022 statements and Wylie's statements were per se defamatory. Pl.'s Mem. 6.

To state a claim for defamation under Connecticut law, a party must plead facts plausibly demonstrating that: "(1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement." *Khan v. Yale Univ.*, 27 F.4th 805, 817 (2d Cir. 2022). "The standard of fault applicable to private individuals . . . merely requires the plaintiff to prove a negligent misstatement of fact. *Miles v. Perry,* 11 Conn. App. 584, 588 (1987) (internal quotation marks omitted).

The SAC satisfies the first requirement because it alleges that Wylie's statement accusing Rivera of fraud was "false and malicious." SAC 7, ¶ 19. In addition, the SAC alleges that Wylie's statement identified Rivera to and in the presence of the "direct sales executives," third parties, thus satisfying the second and third requirements for defamation under Connecticut law. *Id.* at 7, ¶ 18.

Moreover, Wylie's alleged statements were defamatory per se. "Statements deemed defamatory per se are ones in which the defamatory meaning of the speech is apparent on the face of the statement. . . . Our state has generally recognized two classes

5

of defamation per se: (1) statements that accuse a party of a crime involving moral turpitude or to which an infamous penalty is attached, and (2) statements that accuse a party of improper conduct or lack of skill or integrity in his or her profession or business and the statement is calculated to cause injury to that party in such profession or business." *Silano v. Cooney*, 189 Conn. App. 235, 242 (2019). Wylie's alleged statements about Rivera's termination due to fraud are within the second category of per se defamatory statements and thus Rivera need not plead specific facts to support a claim for reputational harm. *See Stevens v. Khalily*, 220 Conn. App. 634, 646 (2023) ("Whether a party must expressly allege facts sufficient to prove the last common-law element of defamation, reputational harm, turns on the type of defamation asserted, defamation per se or defamation per quod. . . . When the defamatory words are actionable per se, the law conclusively presumes the existence of injury to the plaintiff's reputation. He is required neither to plead nor to prove it.") (internal quotation marks omitted).

Moreover, the SAC's allegations that Wylie made the statements at a March 2022 sales meeting to direct sales executives following Rivera's termination are sufficiently detailed to state a claim as the SAC alleges the content of the communication, who made the statements, approximately when the statements were made, to whom the statements were made, and the general circumstances surrounding the statements. *See Bagley v. Yale Univ.*, 42 F. Supp. 3d 332, 364 (D. Conn. 2014) ("[W]hile a plaintiff 'need not list the alleged defamatory statements verbatim,' she 'must at least plead the content of the alleged communications, when they were made, the context in which they were made, or by and to whom they were made.'") (quoting *U.S. ex rel. Smith v. Yale Univ.*, 415 F. Supp. 2d 58, 109 (D. Conn. 2006)).

Accordingly, Rivera has pleaded sufficient facts to state a claim for defamation based on Wylie's alleged statements at the March 2022 sales meeting.

Rivera, however, has not pleaded sufficient facts to state a claim for any other statements made outside the particular March 2022 meeting. The assertion that "Defendant has continued to this date and has stated in the hearing of diverse persons that the Plaintiff engaged in fraudulent conduct during his employment with the Defendant," SAC ¶ 17, does not identify any third party, does state by whom or to whom the statements were made, and provides no further context. Courts have found these exact allegations insufficient to plead defamation. *See, e.g.*, *Reyes v. Bridgeport Dentist, LLC*, No. FBTCV146041367, 2015 WL 4430850, at *8 (Conn. Super. Ct. June 18, 2015). Thus, Rivera may proceed only with a claim for defamation stemming from the statements made at the March 2022 sales meeting.

### B.     Privileged Statements

CSC suggests that Rivera's allegation that CSC "stated in the hearing of diverse persons that the Plaintiff engaged in fraudulent conduct during his employment with the Defendant" may be a reference to "some sort of administrative hearing." Def.'s Mem. 6. CSC argues that to the extent Rivera is referring to an administrative hearing relating to his employment, termination, or claims in the SAC, such information would be privileged. *Id.* Rivera responds that he is not alleging any statements were made at an administrative hearing. Pl.'s Mem. 9.[3] In any event, I need not determine whether statements made in an administrative hearing are privileged as Rivera has not pleaded sufficient facts to support a defamation claim for any such statements. As noted above, the SAC contains factual allegations sufficiently well pleaded to

---

[3] It appears the reference in the SAC to statements made "in the hearing of diverse persons" is intended to convey that statements were made within earshot of others.

support a claim for defamation stemming from the statements made by Wylie at the March 2022 sales meeting—which was not an administrative hearing.

IV.     **CONCLUSION**

For the foregoing reasons, CSC's Motion to Dismiss Count Two of Rivera's Second Amended Complaint pursuant to Rule 12(b)(6) is denied.

**SO ORDERED.**

New Haven, Connecticut
March 2, 2026

/s/*Sarah F. Russell*
SARAH F. RUSSELL
United States District Judge